UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE ANN HORNBACK,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No.  1:16-CV-298

HON. ELLEN S. CARMODY

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (ECF No. 9.)

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-eight years of age on the date of the ALJ's decision. (PageID.34, 189.) She completed her formal education after the tenth grade, and was previously employed as

a cashier / checker. (PageID.171–172, 310.) Plaintiff applied for benefits on October 9, 2012, alleging disability beginning September 22, 2012, due to a thyroid disorder, double vision, and depression. (PageID.189, 297, 306.) Plaintiff's applications were denied on January 25, 2013, after which time she requested a hearing before an administrative law judge (ALJ). (PageID.275–285.) On November 12, 2013, Plaintiff appeared with her counsel before ALJ William Reamon for an administrative hearing at which time Plaintiff and a vocational expert (VE) testified. (PageID.54–116.) A supplemental hearing was held on August 14, 2014, with additional testimony offered by Plaintiff, a VE, and Dr. Jeffrey Horwitz, M.D., a non-examining medical expert. (PageID.117–185.) In a written decision dated August 29, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.34–53.) On February 2, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–27.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*. 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of September 22, 2012. (PageID.39.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) Graves' disease; (2) visual impairment; (3) affective disorder; and (4) anxiety disorder. (PageID.39–41.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.41–43.) At step four, the ALJ

---

to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

determined Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must be allowed to wear one eye patch, and she cannot be required to perform work presented from the side of her eye patch. Moreover, the claimant cannot be required to perform reading, such as reading numbers on a screen or a paper, as a basic part of her work functioning. The claimant cannot perform commercial driving, perform hilo driving, or climb ladders, ropes, or scaffolds. The claimant must also avoid exposure to dangerous moving machinery and unprotected heights. Additionally, the claimant is limited to understanding, remembering, and carrying out simple instructions. The claimant can have no more than occasional interaction with supervisors, coworkers, and the general public.

(PageID.43.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work. (PageID.51.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as a light assembler (14,000 regional jobs), packager (6,300 regional jobs), and sorter (3,100 regional jobs). (PageID.174–179.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.53.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from September 22, 2012, the alleged disability onset date, through August 29, 2014, the date of decision. (PageID.53.)

## DISCUSSION

### 1. The ALJ's Evaluation of the Medical Opinions Concerning Plaintiff's Visual Impairments.

The Listing of Impairments (Listings), detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result

in a finding that the claimant is disabled. At issue here are Listings 2.02 and 2.03:

> 2.02   *Loss of Visual Acuity*. Remaining vision in the better eye after best correction is 20/200 or less.
>
> 2.03   *Contraction of the visual field in the better eye*, with:
>
> A.   The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or
>
> B.   A mean deviation of –22 or worse, determined by automated static threshold perimetry as described in 2.00A6a(v); or
>
> C.   A visual field efficiency of 20 percent or less as determined by kinetic perimetry (see 2.00A7b).

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 2.02, 2.03.  The thrust of Plaintiff's first argument is that the ALJ's step three determination is faulty.  The Court agrees.

The record demonstrates that Plaintiff suffers from Graves' disease.  Among other things, this impairment causes Plaintiff's eyes to become misaligned.  Consequently, Plaintiff experiences double vision.  She was treated for this problem with a prescription for a prism over her eye glasses.  She testified that this cured the double vision when looking straight ahead, but she continued to experience double vision in her peripheral vision. (PageID.122.)  In order to read, she'd have to hold things up as close as twelve inches from her face. (PageID.123.)  Given these limitations, Dr. Jeffery Horwitz, a non-examining medical expert, testified at the hearing that Plaintiff equaled the requirements of Section 2.02.  He noted this remained so even after Plaintiff received the prism, as she continued to experience double vision in her peripheral vision. (PageID.132.)  He did note that Plaintiff's double vision could be eliminated by covering one eye with a patch. (PageID.132.) Plaintiff's optometrist, Dr. Amanda Hodge, also indicated that Plaintiff met the requirements of Listing 2.03A.  (PageID.589)

Despite all this, the ALJ's step three discussion regarding these listings consists only of a recitation of the listings' elements and a conclusory sentence stating that the medical evidence does not establish she meets the listings' requirements.  (PageID.41.)  No discussion is given to whether Plaintiff might equal the listings.  It is unclear, therefore, why the ALJ found Plaintiff did not meet or equal either Listing 2.02 or 2.03.  An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995). Here, the ALJ did not provide an analysis of the visual listings sufficient to allow this Court to trace the path of her reasoning, and this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

In doing so, the Court acknowledges the Sixth Circuit has concluded that the failure by an ALJ to provide extensive reasoning at step three is not, by itself, grounds for relief.  *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir., Nov. 17, 2014).  But that does not compel a different result in this case.  Here, the ALJ did discuss Dr. Horowitz and Dr. Hodge's opinions regarding the listings later in the opinion.  Both were discounted based largely on the premise that they were inconsistent with the findings of neuro-ophthalmological specialist Dr. Glisson.  Here it appears that the specialist examined Plaintiff on two occasions, and only once after the use of the prism.  While the specialist does make findings that are not of listing level severity, (PageID.686) he did indicate that it was his impression that there was a non-localizing visual field constriction in both eyes.  (PageID.689.)  It is not clear such is inconsistent with Dr. Horowitz's findings.  Accordingly this matter will be remanded to reevaluate whether Plaintiff's impairments meet or equal Listings 2.02 and 2.03.

### 2. The ALJ's Evaluation of the Medical Opinions Concerning Plaintiff's Mental Impairments.

Next Plaintiff contends the ALJ erred by assigning too little weight to the opinion of Dr. Stephen Newman, Ed.D., a consultative examiner. (PageID.717–719.) She further claims the ALJ should have given more weight to the opinions of Ms. Elizabeth Oppewal, a limited licensed psychologist.[2] Both opinions find Plaintiff's mental impairments limit her to an extent much greater than that found by the ALJ. Plaintiff claims that because the two opinions were consistent with each other, the ALJ should have given them more weight. The Court discerns no error.

As a consultative examiner, Dr. Newman's opinions were not entitled to any particular weight. *See Karger v. Comm'r of Soc. Sec.*, 414. F. App'x 739, 744 (6th Cir. 2011). Similarly, Ms. Oppewal's opinion, given after her first examination of Plaintiff was not entitled to any particular deference. *See, e.g.*, *Kornecky*, 167 F. App'x at 506–07. Plaintiff is correct that consistency is one of the factors that an ALJ should consider when weighing medical opinions. "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).[3] The ALJ found that Dr. Newman's and Ms. Oppewal's opinions were inconsistent with the record as a whole. This determination is supported by substantial evidence.

---

[2] Plaintiff incorrectly refers to Ms. Oppewal as Ms. Capewar. Ms. Oppewal's opinion was also signed by Dr. Nilanjan Gajare, M.D., several months later. The Court does not find the addition of Dr. Gajare transforms this opinion into one from a treating source. The record only contains one treatment note from Dr. Gajare prior to the addition of his signature. (PageID.507.)

[3] Plaintiff's argument that the two opinions are consistent with each other thus misses the point. Even though Dr. Newman and Ms. Oppewal both found Plaintiff to be impaired to a greater degree than that found by the ALJ, as will be shown the ALJ's conclusion that both opinions were inconsistent with the record as a whole is supported by substantial evidence.

### A.      Dr. Newman.

The restrictions that Dr. Newman suggested were undermined by his own observations as well as Plaintiff's activities of daily living. (PageID.49.) After his examination of Plaintiff, Dr. Newman reported that Plaintiff had a poor prognosis as well as significant attention difficulties that and would impose a certain amount of difficulty in understanding, retaining, and following simple instructions. (PageID.478–479.) But while his examination revealed she had difficulty with math and recalling some facts, she was not overly anxious during the examination even though she reported social anxiety. (PageID.477.) She was oriented to person, place and time, was able to identify her age, date of birth, the current and former president of the United States, and several large cities. (PageID.478.) Dr. Newman further stated she was capable of learning and asking appropriate questions. (PageID.478.) The ALJ reasonably concluded these findings were inconsistent with the doctor's conclusions.

The ALJ also reasonably found Dr. Newman's opinion was inconsistent with Plaintiff's daily activities. On her function report, for example, Plaintiff stated she would do daily chores such as laundry and cleaning, as well as watch television. (PageID.364.) She could crochet and do large print word search puzzles, although she reported doing them for longer periods before the onset of her impairments. (PageID.367.) She reported no changes in her social activities prior to her onset as she reported she always had problems with others. (PageID.367.) Still, she would go out at least once a day, and could go shopping. (PageID.366.) She followed written instructions "not very well" but was "usually good" following spoken instructions. (PageID.368.) She got along "very well" with authority figures. (PageID.369.) It was not unreasonable for the ALJ to find these activities  required abilities in excess of the limitations provided by Dr. Newman. The ALJ's

9

decision to assign little weight to this opinion is supported by substantial evidence and complies with the regulations for considering medical opinions.

        B.      *Ms. Oppewal.*

The ALJ also found Ms. Oppewal's opinion to be inconsistent with the record as a whole. After an initial ninety minute evaluation in June 2013, Ms. Oppewal assigned Plaintiff a GAF score of 41. Plaintiff's prognosis was "fair." (PageID.495.) Ms. Oppewal also evaluated Plaintiff in seventeen different categories encompassing the areas of mental abilities and aptitudes needed to do unskilled work, semiskilled and skilled work, and work for particular types of jobs. (PageID.497–498.) Among other things, she found that Plaintiff was unable to meet competitive standards in areas such as remembering work-like procedures, maintaining attention for two hour segments, getting along with co-workers or peers without unduly distracting them, and interacting appropriately with the public. (PageID.497–498.) Furthermore, were she to work, Ms. Oppewal indicated that Plaintiff could be expected to be absent from work more than four days a month. (PageID.499.) She indicated these limits were due to PTSD that limited Plaintiff's active working memory, but admitted these limits were based on the diagnosis and the clinical interview, not on any testing. (PageID.497–498.)

The ALJ assigned "minimal weight" to the opinion and provided several reasons in support of this decision. He noted, for example, that the opinion was offered on a checkbox form, after no testing, and after only a single evaluation. (PageID.50.) These were all appropriate considerations to make. The ALJ also referenced the January 2013, opinion of state agency physician Dr. Jung Kim, who concluded that Plaintiff was capable of performing simple, routine work. (PageID.197–198.) The ALJ gave the opinion "great weight," finding it was consistent with

10

the record as a whole. (PageID.48.)  The record also shows that soon after Ms. Oppewal's evaluation, Plaintiff began individual therapy. By all accounts this therapy, and related medication adjustments, led to a continued improvement in Plaintiff's functioning such that she had soon resolved many of the issues with her family that had been troubling her, and had begun to spend more time with them. (PageID.523, 653.) Less than a year later she ended therapy and agreed with her therapist that she had accomplished her goals for treatment. (PageID.643.) Thus the ALJ noted that neither the record before, or the record after, Ms. Oppewal's evaluation supported the severity of her opinions.

Accordingly, the ALJ correctly applied the factors for evaluating medical opinions and his decision to assign minimal weight to the opinion is supported by substantial evidence. The Court does not doubt that Plaintiff has a certain amount of limitation in following directions and relating with others, however such limitations are adequately accounted for in the RFC. Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g). This matter is remanded for further factual findings, including but not necessarily limited to, reconsideration of Listing 2.02 and 2.03.

Date:  March 30, 2017                               /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge